## EASTER *v.* GAUNT.

4-6002                                                      141 S. W. 2d 833

Opinion delivered June 24, 1940.

E. W. Brockman, for appellants.
Coleman & Gantt, for appellees.

GRIFFIN SMITH, C. J. In 1924 Wilson Easter[1] conveyed a half interest in certain properties to H. B. Gaunt, and thereafter the two, as partners, conducted a ginning business. Improvements were made, involving additional investments. Gaunt died in June, 1937, and shortly thereafter suit was brought by Easter and his wife against Odie Gaunt as administratrix of H. B. Gaunt's estate, and against others in interest.

The complaint alleged that H. B. Gaunt was to keep books for the firm, without salary; that Easter's duties involved outside work, without salary; that in April, 1930, the partnership was expanded for the purpose of doing a plantation furnishing business; that Easter, in

---

[1] Easter's wife joined in the conveyance, consisting of lot 6, block 1, of Hanf's Addition to Pine Bluff, together with gin fixtures, etc. Appellant states that the property affected by the transfer comprised practically all of the assets of the partnership as it was originally constituted.

addition to his partnership interest, contributed $816.33 to the enlarged operations; that Gaunt appropriated to his own use funds belonging to the business, and took individual title to partnership property.

The administratrix filed answer, denying the allegations. In a cross-complaint it was alleged that on April 8, 1930, Wilson Easter borrowed $2,000 of Odie Gaunt. The debt was evidenced by note, secured by deed of trust covering Easter's interest in the gin property. There was the further allegation that a payment of $50 was made on the note April 8, 1933.[2]

The chancellor dismissed the complaint for want of equity. In respect of the cross-complaint, the court found that the obligation was barred by limitation. Effect of this holding was to find that the payment alleged to have been made in 1933 was not *bona fide*.

Appellants insist they have established, by a clear preponderance of the testimony, that Gaunt's estate is liable for $14,422.85. Items comprising this total are shown in the footnote.[3]

There is a great deal of testimony of a general nature, dealing with particular transactions, and statements alleged to have been made by Gaunt at various times are quoted. It is objected that conversations had with the intestate were inadmissible.[4]

It is not necessary to pass upon this objection, inasmuch as the appeal must be disposed of on other ground. However, much of the testimony of the character now challenged was admitted without objections.

---

2 Although Easter's suit was for an accounting of the partnership business, it will be observed that the cross-complaint alleges an individual indebtedness due by Wilson Easter to Odie Gaunt, wife of H. B. Gaunt. In the cross-complaint there is a prayer that Jim McLellan, trustee, be made a defendant, and that the deed of trust be foreclosed. In Easter's complaint of June 28, 1937, Odie Gaunt was sued individually.

3 One-half of $6,550 salary drawn by Gaunt, $3.275; one-half of $11,703.25 money drawn by Gaunt, $5,851.62; one-half of $600 profit on 400 cords of wood, $300; one-half of $1,404.05, profit from 1937 crop, $702.02; one-half of $1,336.40, proceeds of partnership corn and livestock sold by F. L. Parsons, $668.20; one-half of $4,709.89, gin fees not reported by Gaunt, $2,354.94; one-half of $2,012.15, sale price of gin property, $1,021.07; one-half of $500, rental received for gin, $250.— Total, $14,422.85.

4 Pope's Digest, § 5154.

The contract of partnership was oral. Appellants question Gaunt's action in crediting himself with salary of $500 per year for all years, including 1924, except three. The exceptions were: 1926, $800; 1927, $900; 1928, $850; and 1929, $800.[5]

There is testimony on behalf of appellees that Gaunt was an excellent bookkeeper; that his records were properly kept, and that settlements were made yearly and the books regularly closed. In these settlements it is claimed that the balance due each partner was shown.

Wilson Easter testified that Gaunt was adjudged insane "in the early part of 1929." However, he emphasizes contemporaneous conversations had with Gaunt and seeks to prove certain obligations by such admissions. It does not appear there was an adjudication that Gaunt was mentally incompetent, although he did suffer a nervous breakdown and spent some time in a hospital. It also appears that payment of a salary to Gaunt was discussed in 1929. Soon after leaving the hospital Gaunt and Easter enlarged their partnership to include a limited furnishing business. Gaunt personally owned a farm and operated it on his own account. Some of the evidence tends to show that partnership property and funds were used by Gaunt. Other testimony disputes this and shows that Easter's permissible withdrawals were in excess of Gaunt's.

An examination of the record convinces us that the testimony, as abstracted, presents questions of fact, some of which could not be determined without complete transcripts of the partnership business, supplemented by such explanatory testimony as might be necessary to clear obscure transactions. The conclusion reached by the chancellor in respect of Easter's equities are not contrary to a preponderance of the evidence. It is inconceivable that Easter did not know of the salary payments; that he stood by for nearly thirteen years without examining account books which reflected the true status of payments.

5 It is not clear whether the witness (Easter) intended to say $800 was drawn by Gaunt in 1929, or $900.

It is stated in appellees' brief that while suit was pending the court ordered sale of the gin property; that it brought $2,000, and that half of the proceeds was decreed to Easter and half to the Gaunt estate; also, that half of the rental item of $500 contended for has been ordered equally divided.

On the cross-complaint we agree with appellant that the chancellor's findings on the $2,000 note are not contrary to a preponderance of the evidence. There is no substantial testimony that the mortgagors agreed that $50—value of a mule—should be entered as a credit on the note. The testimony is rather convincing that the mule was sold to the partnership, and delivered, in February, 1930. This was before the money was borrowed.

The decree is affirmed on appeal and on cross-appeal.